UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT C. BRAUN,

                         Plaintiff,

v.

CHRIS ABELE, DAVID A. CLARKE, JR.,
BYRON TERRY, MILWAUKEE COUNTY,
REYNALDO HERRERA, and
CASEY PERINE, JR.,

                         Defendants.

Case No. 15-CV-252-JPS

ORDER

1.     BACKGROUND

On Friday, June 6, 2014, Judge Barbara Crabb held that "the Wisconsin laws banning marriage between same-sex couples are unconstitutional." *Wolf v. Walker*, 986 F.Supp.2d 982, 1028 (W.D. Wis. 2014).[1] The next day (Saturday, that is), the Milwaukee County Courthouse "was officially opened (outside of its normal business hours) in order to allow any same-sex couples wishing to do so to apply for marriage licenses and get married at the Courthouse." (Docket #16 at 1). The funding to open the courthouse on Saturday was provided, in whole or in part, by Milwaukee County Executive Chris Abele ("Mr. Abele"). (*See* Docket #19 at 5).

While same-sex couples were being married inside the courthouse, the plaintiff—along with others—was there to oppose and protest the same-sex marriage licenses being issued (Docket #19 at 5). The plaintiff alleges that Milwaukee County Sheriff's Deputy Byron Terry ("Deputy Terry") interfered

---

[1]The Seventh Circuit affirmed Judge Crabb in *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014) (a consolidated appeal), and the Supreme Court denied certiorari, *see Baskin v. Bogan*, 135 S. Ct. 316 (2014) and *Walker v. Wolf*, 135 S. Ct. 316 (2014).

with his ability to express his opposition to these marriages and that those in support of same-sex marriage were not similarly curtailed in their efforts to support these marriages. *Id.*

On February 25, 2015, the plaintiff filed suit against Deputy Terry, Mr. Abele, and Milwaukee County Sheriff David A. Clarke ("Sheriff Clarke") in Milwaukee County Circuit Court, alleging that those individuals: (1) violated the plaintiff's constitutional rights under the First and Fourteenth Amendments; (2) violated the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.*; and (3) are guilty of Misconduct in Public Office, under Wisconsin Statute § 946.12. (Docket #1, Ex. 1). The defendants removed the case to this Court on March 5, 2015. *See* 28 U.S.C. §§ 1441 and 1446.

Since removal of this case, the plaintiff has twice amended his complaint (*see* Docket #8, #19), and the defendants have twice answered those amended complaints (*see* Docket #12, #23). Of note, the plaintiff added three defendants in his first amended complaint: Milwaukee County (hereinafter "the County") and two John Doe Milwaukee County Deputy Sheriffs. (*See* Docket #8). Those deputy sheriffs were later identified in the plaintiff's second amended complaint as Reynaldo Herrera ("Deputy Herrera") and Casey Perine, Jr. ("Deputy Perine"). (Docket #19).

On May 11, 2015, Mr. Abele, Sheriff Clarke, the County, and Deputy Terry (collectively "the movants") filed a motion for partial judgment on the pleadings (Docket #15) and a motion to stay discovery pending resolution of their motion for partial judgment on the pleadings (Docket #17). Mr. Abele, Sheriff Clarke, and the County argue that they are entitled to prevail on all of the claims against them because the plaintiff has failed to allege any personal involvement by Sheriff Clarke or Mr. Abele, and has failed to allege

a policy, custom, or practice subjecting the County to *Monell* liability for the actions of Deputy Terry. (*See* Docket #15). The movants also argue that they are entitled to judgment on the pleadings on the plaintiff's RFRA and Wis. Stat. § 946.12 claims because the plaintiff's allegations fail to state a claim under either of those statutes. *See id.*

The Court will grant the movants' motion for partial judgment on the pleadings, and deny as moot their motion to stay discovery, for the reasons stated below.

2.  LEGAL STANDARD—RULE 12(C) MOTIONS

Rule 12(c) "permits a party to move for judgment after the complaint and answer have been filed by the parties." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). "A motion for judgment on the pleadings is governed by the same standard[] as a motion to dismiss for failure to state a claim under Rule 12(b)(6)," *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014); specifically, both require that "the complaint state a claim that is plausible on its face," *Vinson v. Vermilion Cnty., Ill.*, 776 F.3d 924, 928 (7th Cir. 2015); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Adams*, 742 F.3d at 728.

"Factual allegations are accepted as true at the pleading stage, but 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6)'" or Rule 12(c) motion. *Adams*, 742 F.3d at 728 (quoting *McReynolds v. Merill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)); *see Buchanan-Moore*, 570 F.3d at 827 ("We view the facts in the complaint in the light most favorable to the nonmoving party…. However, we need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law."). While the plaintiff need not plead

"extremely specific facts," *Hoskin v. City of Milwaukee*, 994 F. Supp. 2d 972, 976 (E.D. Wis. 2014), "[a] complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much." *Adams*, 742 F.3d at 728.

3.     FACTS AND ALLEGATIONS

On Saturday, June 7, 2014, the day after Judge Crabb overturned Wisconsin's state ban on same-sex marriage, over seventy couples were married at the Milwaukee County Courthouse. *See* Karen Herzog, *Same-sex Weddings Continue in Wisconsin After Judge Strikes Down Ban*, MILWAUKEE JOURNAL SENTINEL (June 7, 2014), http://www.jsonline.com/news/wisconsin/37535973-mjs_gaymarriage08p1jpg-b99286470z1-262240081.html. The use of the courthouse on a non-business day to conduct the same-sex marriage ceremonies was made possible, in part, by Mr. Abele personally funding the Saturday business hours. (*See* Docket #19 at 5); (Docket #23 at 4) (admitting that "Defendant Chris Abele personally paid for some of the costs associated with keeping the Courthouse open that day"); *see also Herzog*, supra ("Milwaukee County Executive Chris Abele…personally footed the bill for employee overtime at the courthouse.").

While the marriage ceremonies were taking place inside the courthouse, protesters—including the plaintiff—"were picketing on the south side of the [courthouse] near the water fountain." (Docket #19 at 8). The protesters' purpose "was to promote what the Bible says about gay marriage being a sin and against God's law." *Id.* Deputy Terry allegedly ordered the protesters to leave the area by the fountain and "move to the sidewalk," threatening to arrest them if they failed to do so. In addition,

Deputy Terry allegedly would not allow the protesters to enter the courthouse. *Id.*

According to the plaintiff, Deputy Terry did not treat the same-sex marriage supporters in a similar fashion; namely, "[t]here were same-sex supporters holding signs near the Plaintiff and his group, and they were not told to move or threatened with arrest." (Docket #19 at 5); *id.* at 2 (stating that "those picketing in favor of same-sex marriage did not receive any threats"); *id.* at 8. It is unclear, however, whether same-sex supporters—as opposed to same-sex couples—were allowed in the courthouse, or were denied access like the plaintiff and those that were with him (*see* Docket #19 at 2) ("Deputy Terry blocked Plaintiff as he attempted to enter the courthouse to see whether opposite sex couples were also being married.").

From the foregoing, the plaintiff alleges Fourteenth Amendment due process and equal protection violations and First Amendment violations against Deputy Terry. The plaintiff further alleges that Sheriff Clarke is liable for the conduct of Deputy Terry because he "failed to train [him] to do his sworn duty to treat all people equally when demonstrating for a political cause on June 7, 2014." (Docket #19 at 2). The plaintiff also alleges that Deputies Perine and Herrera, who were present at the courthouse (presumably), "should have done more to stop [Deputy] Terry's repeated threats to Plaintiff" than simply telling "Deputy Terry to calm down," *id.*; the Court construes this as a failure to intervene claim against Deputies Perine and Herrera.

In addition, the plaintiff alleges First and Fourteenth Amendment violations against Mr. Abele for Deputy Terry's interference with the plaintiff's protest, and for "act[ing] without lawful authority when he

issued marriage licenses to same-sex couples," *id.* at 4; *see id.* at 7 ("…Judge Crabb made it clear that Defendant Abele had no authority to issue marriage licenses to same-sex couples, as she had given no order that they be issued…"). Similarly, the plaintiff avers that Mr. Abele lacked the authority to "keep open the Milwaukee County Courthouse, a public building, solely to accommodate same-sex couples [seeking] marriage licenses on June 7, 2014." *Id.* According to the plaintiff, Mr. Abele's conduct "violated the [p]laintiff's religious beliefs and voided [his] vote in the referendum in 2006 that struck down gay marriage." *Id.*

Rounding out the plaintiff's constitutional claims, he alleges—as best the Court can tell—that the County is on the hook for the actions of the defendants because all of the defendants "acted in concert to trample state and federal rights secured by the constitution concerning free speech and freedom to practice religious beliefs." *Id.* at 3. And this allegation, taken together with the plaintiff's allegation that Sheriff Clarke failed to properly train Deputy Terry, presumably means that the plaintiff is alleging a *Monell* claim against Milwaukee County.

Finally, the plaintiff alleges violations of federal and state statutes. Namely, he alleges that: (1) the "named [d]efendants acted in concert with Milwaukee County Sheriff's Department and Milwaukee County Executive Chris Abele and are in violation of Wis. Stats. 946.12, Misconduct in Public Office," *id.* at 3; and, (2) Deputies Terry, Perine, and Herrera, Sheriff Clarke, and Mr. Abele "violated the 1993 Religious Freedom Restoration Act, which is the [f]ederal statute protecting religious freedoms," by interfering with the plaintiff's right to express his "deeply held religious objections to same-sex

couples getting married and violating the Bible scriptures that condemn their conduct," *id.* at 4.

4. DISCUSSION

The Court will now turn to analyzing the movants' motion for partial judgment on the pleadings. The Court will first discuss the RFRA and Wis. Stat. § 946.12 claims collectively, turn next to the *Monell* claim against the County, and conclude by discussing the constitutional claims against Sheriff Clarke and Mr. Abele.

> 4.1 The Plaintiff Fails to State a Claim Under the RFRA and Wis. Stat. § 946.12

The movants argue that they are entitled to dismissal of all of the plaintiff's claims under the RFRA "because he has plead no facts to support such a claim." (Docket #16 at 4). That sentence is the universe of the movants' argument on this claim. Similarly, the movants argue—this time in a footnote— that they are entitled to dismissal of the plaintiff's claims under Wis. Stat. § 946.12 because that statute "is a criminal statute that is not applicable in this case." *Id.* at 4 n.4. The plaintiff offers even less in his response in opposition to the movants' motion, failing to address the movants' request for judgment on the pleadings on his RFRA and Wis. Stat. § 946.12 claims. (*See* Docket #21).

To start, the Seventh Circuit has stated that *it is not* the "responsibility [of the Court] to research and construct the parties' arguments." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). That is especially true, here, since the movants are the parties seeking judgment in their favor. *See id.* ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are

waived…"). So too is a Court under no obligation to research and construct a plaintiff's claims from whole cloth, nor formulate opposition to a properly brought motion, even if a plaintiff is *pro se* and his or her pleadings must be construed liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Notwithstanding the perfunctory nature of the movants' arguments in support of its motion, the Court finds that the movants are entitled to judgment on the pleadings on the plaintiff's RFRA claim, for two reasons. To begin, the movants are correct that the plaintiff has failed to allege any facts to support a RFRA claim against them. It is eminently *unclear* what actions the plaintiff believes constitute a violation of the RFRA; nor does the plaintiff's second amended complaint plead the basic elements required to sustain an RFRA claim. *See Adams*, 742 F.3d at 728.

Which brings the Court to its second—and more important—point, which is that the plaintiff *would not ever be able to* meet the statutory requirements under the RFRA against the movants because the RFRA *does not apply* to state governments or state actors. *See City of Boerne v. Flores*, 521 U.S. 507 (1997); *see also O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 400-01 (7th Cir. 2003) (explaining *City of Boerne*). In *City of Boerne*, the Supreme Court held that "application of the RFRA to the states is unconstitutional." *Olsen v. Mukasey*, 541 F.3d 827, 830 (8th Cir. 2008) (citing *City of Boerne*, 521 U.S. at 511); *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005) ("In *City of Boerne*, this Court invalidated RFRA as applied to States and their subdivisions, holding that the Act exceeded Congress' remedial powers under the Fourteenth Amendment.").

If that were not enough, Congress later amended the RFRA's definition of "government" to exclude state governments (and thus state actors) altogether. *Olsen*, 541 F.3d at 830 (citing Pub. L. No. 106–274, § 7(a)(1), 114 Stat. 806 (2000) (codified at 42 U.S.C. § 2000bb–2)). Thus, actions against state governments, state actors, etc., are not cognizable under the RFRA. *Id.; see Hutchinson v. Maine*, 641 F. Supp. 2d 40, 47 (D. Me. 2009) (noting that a plaintiff "cannot seek a civil remedy under the RFRA" against state defendants). Consequently, the movants are entitled to judgment on the pleadings on this claim.

Turning to the Misconduct in Public Office claim, *see* Wis. Stat. § 946.12, the Court finds— despite the movants' irksome choice to request dismissal of this claim in a footnote (*see* Docket #16 at 4)—that the movants are entitled to judgment on the pleadings on this claim, as well. The movants are correct that the statute is a criminal statute and does not, as far as the Court can tell, give rise to a private cause of action. *See Mosay v. Wall*, No. 13-CV-841, 2015 WL 128076, at *8 (W.D. Wis. Jan. 8, 2015) (noting that § 946.12 describes a criminal offense and there is nothing to suggest that the statute gives rise to a private cause of action).

### 4.2 The Plaintiff's *Monell* Claim Against the County Cannot Proceed

"A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell v. Dept. of*

*Social Svcs. Of N.Y.*, 436 U.S. 658, 690 (1978)); *Justice v. Town of Cicero*, 577 F.3d 768, 773 (7th Cir. 2009).

While *Monell* permits municipalities to be held liable under § 1983, "it does not allow for liability under § 1983 on a theory of *respondeat superior* or vicarious liability." *Hoskin*, 994 F. Supp. 2d at 979 (collecting cases). "In other words, '[m]isbehaving employees are responsible for their own conduct,'" *id.* (quoting *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007)), and "units of local government are responsible only for their policies, rather than misconduct by their workers," *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007).

This Court recently noted—when addressing a similar Rule 12(c) motion—that "*Monell* claims are subject to the pleading standard set out by the Supreme Court in…*Twombly* and *Iqbal*," and "boilerplate allegations" or legal conclusions are insufficient to survive a Rule 12(c) motion. *Hoskin*, 994 F. Supp. 2d at 977 (citing *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir. 2011)). Because a *Monell* claim is complex, more factual specificity is required to sustain a *Monell* claim. *See McCauley*, 671 F.3d at 616-617 ("The required level of factual specificity rises with the complexity of the claim.") (citing *Swanson v. Citibank, N.A.*, 514 F.3d 400, 405 (7th Cir. 2010)). This specificity is necessary to "satisfy the 'rigorous standards of culpability and causation' required for municipal liability." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997)).

The County argues that the plaintiff has failed to allege facts sufficient to support a *Monell* claim; instead, according to the County, the plaintiff's claims "are a series of conclusory statements devoid of facts that do no more

than assert *respondeat superior* liability." (Docket #16 at 7). Specifically, the County argues that (1) the plaintiff has failed to allege *or even imply* there is a County policy that was the driving force behind the alleged constitutional violations, *id.* at 8; (2) the plaintiff's claims all arise from the events of June 7, 2014, and thus, whatever their merit, are not "sufficient to show a pattern of misconduct, let alone a widespread practice with the force of law," *id.* at 10; and (3) even assuming Sheriff Clarke or Mr. Abele are policymakers for the purposes of *Monell* liability, the plaintiff fails to allege any facts against either individual to support *Monell* liability, instead "assert[ing] nothing beyond the fact that Mr. Clarke is the Sheriff…and Mr. Abele is the County Executive that paid to keep the Courthouse open on Saturday," *id.* at 11.

The Court agrees with the County that the plaintiff has failed to allege a *Monell* claim, and thus the County is entitled to judgment on the pleadings on this claim. This is so for a number of reasons. First, it is not even clear that the plaintiff is alleging a *Monell* claim in his disjointed second amended complaint. The County assumes as much—as far as the Court can tell—because the County was added as a defendant in this action, the plaintiff alleges that *all of the defendants* "acted in concert" (Docket #19 at 3), and the plaintiff alleges that Sheriff Clarke failed to train Deputy Terry, *id.* at 5. However, the plaintiff never alleges an express policy, a widespread practice, or actually makes a single allegation against the County that is not couched in general terms—*i.e.* "the named defendants did X."

Second, assuming, *arguendo*, that the plaintiff *is* alleging a *Monell* claim, the County is correct that the plaintiff's second amended complaint falls woefully short. To wit, and as noted above, the plaintiff's allegations "give[] no notice as to the Defendants' improper conduct" and "fail[] to

Page 11 of 18

Case 2:15-cv-00252-JPS   Filed 06/25/15   Page 11 of 18   Document 29

specify the relevant 'custom' or 'policy'" that would sustain a *Monell* claim. *McTernan*, 564 F.3d at 658; *see also Town of Cicero*, 577 F.3d at 773. Moreover, while there is no "bright-line rule[] defining a widespread custom or practice," *Thomas*, 604 F.3d at 303, nor a "clear consensus as to how frequently conduct must occur to impose *Monell* liability," *id.*, *it is clear* that "it must be more than one instance," *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988), or even three, *Thomas*, 604 F.3d at 303 (citing *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)). And, here, the plaintiff alleges only a single incident on June 7, 2014. This alone cannot sustain a *Monell* claim.[2]

Third, to the extent that the plaintiff alleges a *Monell* claim based on the conclusory statement that Sheriff Clarke failed to train Deputy Terry to treat people equally, this too is insufficient to sustain a *Monell* claim for failure to train. As the County argues, there are no supporting facts to shore up this claim, nor facts evidencing a "pattern of similar constitutional violations by untrained employees" which is "'ordinarily necessary'" for a *Monell* claim under that theory. *Connick v. Thompson*, — U.S. —, 131 S. Ct. 1350, 1354 (2011) (quoting *Bryan Cnty.*, 520 U.S. at 410); *see Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (2012) ("[A]n inadequacy in police training can serve as a basis for liability under Section 1983, but only where the failure to train amounts to deliberate indifference to the citizens the officers encounter.") (citing *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *cf. Thomas*, 604

---

[2]True, the plaintiff alleges some later events concerning the Wisconsin State Attorney General's Office, a Milwaukee County Judge, and employees of the City of Milwaukee, (*see* Docket #19 at 3), but these events are only tangentially related—if related at all—to the constitutional violations alleged by the plaintiff.

F.3d at 306 ("In § 1983 actions, the Supreme Court has been especially concerned with the broad application of causation principles in a way that would render municipalities vicariously liable for their officers' actions.").

Fourth, to the extent that the plaintiff alleges a *Monell* claim based on the actions of policymakers, and assuming Mr. Abele and Sheriff Clarke fit that description for purposes of *Monell*, there are simply no allegations that Mr. Abele or Sheriff Clarke directed the conduct of Deputy Terry, were aware of his conduct (or similar conduct) and failed to rectify it, or were even present at the courthouse on June 7, 2014. Again, without more, a *Monell* claim on such bare bones allegations cannot proceed. *See McTernan*, 564 F.3d at 659.

At bottom, the plaintiff's *Monell* claim against the County does not allege enough "by way of factual content to 'nudg[e]' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570). Indeed, the Court is unconvinced the plaintiff's allegations are even conceivable.

Thus, for all of the reasons noted above, the County is entitled to judgment on the pleadings regarding the plaintiff's *Monell* claim.

### 4.3 The Plaintiff's § 1983 Claims Against Sheriff Clarke and Mr. Abele Cannot Proceed

Liability under § 1983 "is premised on the wrongdoer's personal responsibility," *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012), and thus "[a]n *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sondquist*, 699 F.2d 864, 869 (7th Cir. 1983); *see Chavez*, 251 F.3d at 651; *Gentry v. Duckworth*, 65 F.3d 55, 561 (7th Cir. 1995).

"The doctrine of *respondeat superior* cannot be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights." *Chavez*, 251 F.3d at 651. A supervisor will be found liable, however, "if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997). This, once again, requires some personal involvement in the constitutional deprivation, *see Chavez*, 251 F.3d at 651, but does not require that the defendant "participate *directly* in the deprivation." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (emphasis added). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable…. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988) (citations omitted); *accord Matthews*, 675 F.3d at 708*; Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 869-870 (7th Cir. 2011)*; Chavez*, 251 F.3d at 651.

Sheriff Clarke and Mr. Abele argue that the plaintiff has failed to allege their personal involvement in the events on June 7, 2014—*i.e.* Deputy Terry's alleged interference with the plaintiff's protest—that give rise to the plaintiff's claims against them—namely, violations of the First and Fourteenth Amendment. (*See* Docket #16 at 12). Stated another way, the two defendants argue that because the plaintiff has not alleged they were present at the courthouse on June 7, 2014, or were aware of (condoned, or turned a blind eye to) Deputy Terry's actions, the plaintiff's allegations "are insufficient to sustain his claims against Sheriff Clarke and Mr. Abele on

either a theory of personal liability or on a theory of supervisory liability." *Id.* The Court agrees.

The plaintiff has failed to allege any facts giving rise to personal or supervisory liability on the part of Sheriff Clarke or Mr. Abele for Deputy Terry's actions. Even the affidavits the plaintiff submitted from other protesters that were with him at the courthouse (*see* Docket #8-1), describe events that implicate Deputy Terry alone. And, to the extent that the plaintiff alleges an amorphous conspiracy by all of those involved to violate his rights (*see* Docket #19 at 3), bare allegations made up of legal conclusions, without further factual support, cannot give rise to § 1983 liability. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Adams*, 742 F.3d at 729 (noting that *Iqbal* and *Twombly* "obviously require more than mere notice," and thus "[a]n inadequate complaint will not survive a motion to dismiss simply because the defendants managed to figure out the basic factual or legal grounds for the claims").

That is not the end of the story, however. The plaintiff also alleges a violation of his constitutional rights by Mr. Abele for "issuing marriage licenses to same-sex couples and by using his personal funds to keep the Courthouse open outside its normal business hours." (Docket #16 at 12). Mr. Abele also moves for judgment on the pleadings on this portion of the plaintiff's claim against him, arguing that the plaintiff's allegations fail as a matter of law. *Id.* at 12-13. They fail, that is, because "[t]he Equal Protection Clause does not, as a matter of law, prohibit the issuance of marriage licenses to same-sex couples," but even if it did, the County Clerk issued the marriage licenses, and not Mr. Abele. *Id.* at 12. Similarly, Abele argues that there is no

Page 15 of 18

Case 2:15-cv-00252-JPS   Filed 06/25/15   Page 15 of 18   Document 29

provision in the constitution—and the plaintiff has not identified one—"that prohibited Mr. Abele from keeping the Courthouse open over the weekend" for same-sex marriages. *Id.* at 13.

Mr. Abele is entitled to judgment on the pleadings on this portion of the plaintiff's claim, as well. This is so because the plaintiff has not alleged that Mr. Abele's conduct "violated [his] rights, privileges, or immunities secured by the Constitution or laws of the United States." *Lanigan*, 110 F.3d at 471. By that, the Court means that the plaintiff has not alleged that Mr. Abele's actions *actually caused him harm*, other than personal offense. Nor has the plaintiff, as far as the Court can tell, identified a law, provision of the Constitution, or legal precedent which supports his view that Mr. Abele's conduct was unlawful.

True, the plaintiff alleges that Mr. Abele's conduct "violated [his] religious beliefs and voided [the plaintiff's] vote in the referendum in 2006 that struck down gay marriages." (Docket #19 at 7). And Mr. Abele's conduct may very well have violated his religious beliefs, but that does not give rise to a constitutional claim under Section 1983. And it strains credulity to allege that Mr. Abele's conduct "voided" the plaintiff's vote in the 2006 referendum. Indeed, if anyone's conduct did so—and the Court is not saying anyone's did—it was that of Judge Crabb, who struck down Wisconsin's ban on gay marriage. But, she is not a defendant in this case, *nor could she be*, given that she is entitled to absolute judicial immunity. *See Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005); *Dellenbach v. Letsinger*, 889 F.2d 755, 759-60 (7th Cir. 1989). And, it is questionable whether what the plaintiff alleges states a constitutional claim, anyhow. As such, the Court is obliged

to grant Mr. Abele's motion for judgment on the pleadings on this portion of the plaintiff's claim.

Finally, Sheriff Clarke argues that if the plaintiff is alleging personal or supervisory liability against him for Deputy Terry's actions, due to his alleged failure to train Deputy Terry, this portion of the claim against him should also be dismissed for the same reasons the Court dismissed the plaintiff's failure to train *Monell* claim. (Docket #16 at 13). The Court concurs; thus, for the same reasons discussed above concerning the portion of the plaintiff's *Monell* claim alleging a failure to train, the Court will grant Sheriff Clarke judgment on the pleadings here.

4. CONCLUSION

Consistent with the foregoing, the Court will grant the movants' motion for judgment on the pleadings on the following: (1) the RFRA claim against the movants; (2) the Misconduct in Public Office claim, *see* Wis. Stat. § 946.12, against the movants; (3) the *Monell* claim against the County; and (4) the Section 1983 claims—for violations of the First and Fourteenth Amendment—against Sheriff Clarke and Mr. Abele.

Because Sheriff Clarke and Mr. Abele will be dismissed from this action, the Court finds it unnecessary to delve into their argument, offered in the alternative, that they are entitled to qualified immunity on the plaintiff's claims against them. (*See* Docket #16 at 13-15).[3]

---

[3] The plaintiff offered no opposition to the defendants' motion for judgment on the pleadings, *except* on the issue of qualified immunity. (*See* Docket #21 at 2). In that regard, the plaintiff argues that the defendants are "not entitled to qualified immunity because…this case [was moved] from state court to federal court," and "there is no mention of [qualified immunity] in the Constitution." *Id.* Because the Court need not reach the issue of qualified immunity, the Court will shelve explaining—at length, or otherwise—the fallacy of this argument.

Lastly, and as noted above, the movants filed a motion to stay discovery pending resolution of the their motion for judgment on the pleadings. (Docket #17). The Court will deny this motion as moot, given that the Court has granted the movants' motion for partial judgment on the pleadings.

Accordingly,

IT IS ORDERED that Mr. Abele, Sheriff Clarke, the County, and Deputy Terry's motion for partial judgment on the pleadings (Docket #15) be and the same is hereby GRANTED; Sheriff David A. Clarke, Milwaukee County Executive Chris Abele, and Milwaukee County be and the same are hereby DISMISSED from this action; and

IT IS FURTHER ORDERED that Mr. Abele, Sheriff Clarke, the County, and Deputy Terry's motion to stay discovery pending resolution of their motion for partial judgment on the pleadings (Docket #17) be and the same is hereby DENIED as moot.

Dated at Milwaukee, Wisconsin, this 25th day of June, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge